UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

ANGELA W. JEFFERSON,                :
            Plaintiff,              :
                                    :
      v.                            :      CA 09-537 ML
                                    :
ROBERT M. GATES,                    :
SECRETARY OF DEFENSE,               :
            Defendant.              :

**REPORT AND RECOMMENDATION**

David L. Martin, United States Magistrate Judge

      Before the Court is Defendant's Motion to Dismiss (Document
("Doc.") #22) ("Motion to Dismiss" or "Motion").  Plaintiff
Angela W. Jefferson ("Plaintiff") has filed a response to the
Motion.  See Plaintiff['s] Response to Defendant['s] Motion to
Dismiss (Doc. #25) ("Plaintiff's Response").

      The Motion to Dismiss has been referred to me for
preliminary review, findings, and recommended disposition
pursuant to 28 U.S.C. § 636(b)(1)(B).  The Court has determined
that no hearing is necessary.  After reviewing the filings and
performing independent research, I recommend that the Motion be
granted for the reasons stated below.

**I.  Facts[1] & Travel**

      Beginning on or about October of 2002, Plaintiff, an
African-American female, was employed at the Defense Institute of

---

[1] The facts stated in Plaintiff's Complaint (Doc. #1) are assumed
to be true for purposes of this Report and Recommendation.

International Legal Studies ("DIILS"). _See_ Complaint (Doc. #1) ¶
2. Plaintiff worked at DIILS for five years. _See id._ She was
the only black employee at DIILS. _See id._ ¶ 5.

In approximately May of 2007, the Department of Defense
initiated an investigation into allegedly unlawful and
discriminatory conduct and employment practices, particularly at
DIILS. _Id._ ¶ 3. This investigation was a direct consequence of
allegations raised by Plaintiff that she had been subjected to
discrimination based on her race (African-American) and color
(black), as well as reprisal (prior Equal Employment Opportunity
Commission ("EEOC" or the "Commission") complaint), harassment
(nonsexual), verbal abuse, different pay, and different policy
standards. _See id._

Plaintiff filed a Complaint of Discrimination in the Federal
Government with DIILS ("DIILS Complaint") on October 22, 2007.
_See_ Defendant's Memorandum of Law in Support of His Motion to
Dismiss ("Defendant's Mem."), Attachment ("Att.") 1 (Declaration
of Mary Braisted ("Braisted Decl.")), Exhibit ("Ex.") B (DIILS
Complaint).[2] In the DIILS Complaint Plaintiff indicated that she

---

[2] Ordinarily a court may not consider any documents that are
outside of the complaint, or not expressly incorporated therein,
unless the motion is converted into one for summary judgment.
_Alternative Energy, Inc. v. St. Paul Fire & Marine Insurance Co._, 267
F.3d 30, 33 (1st Cir. 2001). However, there is a narrow exception "for
documents the authenticity of which are not disputed by the parties;
for official public records; for documents central to plaintiffs'
claim; or for documents sufficiently referred to in the complaint."
_Id._ (quoting _Watterson v. Page_, 987 F.2d 1, 3 (1st Cir. 1993)); _see
also Barber v. Verizon New England, Inc._, No. C.A. 05-390ML, 2005 WL

had been discriminated against on the basis of her race and color.  <u>See</u> Braisted Decl., Ex. B.  Plaintiff stated that she believed the Finance and Administrative Department and its director, Margaret "Jane" Donahue, discriminated against her; that the most recent dates on which the alleged discrimination

3479834, at *1 n.1 (D.R.I. Dec. 20, 2005)("While a court deciding a Rule 12(b)(6) motion is normally constrained to consider only the plaintiff's complaint, a court may nonetheless take into account a document whose contents are linked to the complaint and whose authenticity is not challenged, such as a charge of discrimination filed with the Commission, without converting the motion into a summary judgment request.")(citing <u>Beddall v. State St. Bank & Trust Co.</u>, 137 F.3d 12, 17 (1st Cir. 1998)); <u>Robinson v. Chao</u>, 403 F.Supp.2d 24, 28-31 (D.D.C. 2005)(considering EEO documents and dismissing hostile work environment claim which plaintiff failed to administratively exhaust); <u>Maldonado-Cordero v. AT&T</u>, 73 F.Supp.2d 177, 185 (D.P.R. 1999)("Plaintiffs' EEOC charges may be considered either as a matter referenced in the complaint or as a public record subject to judicial notice.")(citing <u>Mack v. S. Bay Beer Distributors, Inc.</u>, 798 F.2d 1279, 1282 (9th Cir. 1986)(holding that court may take judicial notice of records and reports of administrative bodies without converting a motion to dismiss into one for summary judgment), <u>overruled on other grounds by</u> <u>Astoria Fed. Savings & Loan Association v. Solimino</u>, 501 U.S. 104, 111 S.Ct. 2166 (1991)); <u>Arizmendi v. Lawson</u>, 914 F.Supp. 1157, 1160-61 (E.D. Pa. 1996)("In resolving a Rule 12(b)(6) motion to dismiss, a court may properly look beyond the complaint to matters of public record including court files, records and letters of official actions or decisions of government agencies and administrative bodies, documents referenced and incorporated in the complaint and documents referenced in the complaint or essential to a plaintiff's claim which are attached to a defendant's motion.").

Here the documents at issue are official records and/or documents central to Plaintiff's claims.  <u>See</u> Defendant's Memorandum of Law in Support of His Motion to Dismiss ("Defendant's Mem."), Attachment ("Att.") 1 (Declaration of Mary Braisted ("Braisted Decl.")), Exhibits ("Exs.") A-D; Plaintiff['s] Response to Defendant['s] Motion to Dismiss ("Plaintiff's Response"), Ex. 1.  Accordingly, the Court finds that the documents may be considered without converting the Motion into one for summary judgment.  <u>See</u> <u>Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.</u>, 267 F.3d at 33-34; <u>see also</u> <u>Romano v. NFN Tolson</u>, Civil Action No. 06-573-JJF, 2007 WL 1830896, at *2 (D. Del. June 25, 2007)("[A]uthentic records documents relating to the issue of exhaustion[] may be considered by this Court without converting the motion to a motion for summary judgment.").

occurred were May 6, June 16, September 18-19, September 24, and
October 2, 2007; and that she had discussed her DIILS Complaint
with EEO counselor Kelly Soo Hoo.   See id.

The procedural history following the filing of Plaintiff's
DIILS Complaint is summarized in the Show Cause Order issued by
the EEOC on February 17, 2009:

> 1. Complainant filed a formal Complaint of discrimination
> on October 22, 2007.  An Agency[3] investigation was
> requested on December 20, 2007[,] and was commenced on
> January 9, 2008.
>
> 2. Complainant resigned from her position with the Agency
> on December 27, 2007.
>
> 3. By letter dated January 29, 2008[,] Complainant
> informed the Agency she intended to pursue her complaint.
>
> 4.  An Acknowledgment Order was issued to the parties by
> the Hearings Unit of the Equal Employment Opportunity
> Commission on November 10, 2008.
> The Agency contends Complainant has not issued any action
> based on the Acknowledgment and Order.
>
> 5.  The Agency attempted to contact Complainant by
> certified mail and telephone at ... Complainant's last
> known number[] to pursue discovery and settlement
> pursuant to the Acknowledgment and Order with no success.
> The telephone number was no longer in service and the
> certified mail was not picked up or signed for.
> The Agency moved for dismissal based on Complainant's
> failure to prosecute her case.
>
> On January 2, 2009[,] the Administrative Judge issued
> a scheduling order in this case.  The order instructed
> the parties that a prehearing conference was scheduled
> for February 6, 2009[,] via telephone and the witness
> lists were due no later than 5 days prior to the
> prehearing conference.  Complainant failed to submit a

---

[3] The "Agency" is presumably the Defense Institute of
International Legal Studies ("DIILS").

4

witness list and failed to contact the undersigned [Administrative Judge] to request an extension or offer an explanation for her actions.

On February 6, 2009[,] at 1:30 PM the Administrative Judge telephoned the Agency representative who indicated he still had not heard from Complainant. The Administrative Judge then attempted to telephone Complainant at her last known telephone number and found it was not in service.

Complainant telephoned the Administrative [Judge] at approximately 2:50 PM and asked if we were having the teleconference. She offered no explanation for failing to notify the Agency or the Commission that her record telephone number was no longer in service. Nor did she explain why she has not contacted the Agency with respect to settlement as provided at Paragraph IV of the Acknowledgment Order or why she did not submit a witness list pursuant to the instructions in the scheduling order. Moreover, she denied that she was aware of any correspondence from the Agency, stating only that she would talk to someone at the post office as her mail was often misdelivered.

Braisted Decl., Ex. C (Show Cause Order) at 1-2. The

Administrative Judge "ORDERED [Plaintiff] to show cause, within

15 days of the date of [the Show Cause] Order, as to why

sanctions pursuant to 29 C.F.R. § 1614.109(f)(3),[4] up to and

---

[4] Section 1614.109(f)(3) provides in relevant part that:

When the complainant, or the agency against which a complaint is filed, or its employees fail without good cause shown to respond fully and in timely fashion to an order of an administrative judge, or requests for the investigative file, for documents, records, comparative data, statistics, affidavits, or the attendance of witness(es), the administrative judge shall, in appropriate circumstances:

....

(iv) Issue a decision fully or partially in favor of the opposing party; or

....

5

including dismissal of the captioned complaint[,] should not be imposed for the above-described conduct." Id. at 2.  Plaintiff responded to the Show Cause Order by requesting a continuance of fifteen days.  See Braisted Decl., Ex. D (Respon[se] to Order of Show Cause) at 1.  Plaintiff stated:

> 1.  A formal complaint of discrimination was filed on 22 October 2007.  An agency investigation was requested on 20 December 2007 and was commenced on 9 January 2008. However, the investigating official did not interview the complainant['s] witnesses.
>
> 2.  Complainant did resign from her position on 27 December 2007.
>
> 3.  Complainant did submit a letter on 29 January 2008 to continue the discriminat[ion] case of Angela W. Jefferson v. Robert M. Gates, Secretary of Defense, Agency Docket No. DON 08-DIILS-001.  Complainant submitted both home and cell phone number[s] with email address. Complainant['s] home phone was removed due to harassing phone calls from an untraceable phone number. Complainant did not receive[] contact via the alternate phone number or email listed.
>
> 4.  Complainant did not receive certified mail.
>
> 5.  Complainant did not submit a list of witness[es] due to [the] fact [that] the witnesses were on the original investigation list and were not interview[ed] but witness[es] had agreed to provide written statements. Statements will be provided upon request or member will be provided if further information is needed.
>
> 6.  An assessment of the complainant['s] damages w[as] not yet completed and thus the complainant was unable to provide [a] settlement request.
>
> 7. Complainant was emotionally distraught and traumatized by the events that le[]d to the EEOC complaint and was

---

29 C.F.R. § 1614.109(f)(3) (2009).

under professional psychiatric care.

8.  As [of] 3 March 2009 the complainant ha[s] receive[d] the medical care needed and will continue to receive medical care as needed.  Complainant is now able to help and proceed without delay in her case.  Due to confidentiality medical documents will be made available as requested.

Id. at 1-2.

In a Dismissal Order dated March 13, 2009, the EEOC dismissed Plaintiff's DIILS Complaint.  See Braisted Decl., Ex. A (Dismissal Order) at 4.  After reciting the procedural history summarized in the Show Cause order, the issuance of the Show Cause Order, and Plaintiff's response thereto, the Administrative Judge continued:

It is significant that at no time prior to the issuance of the Show Cause Order did Complainant request any extension of time to respond to orders or comply with time deadlines.  Nor did she notify either the Administrative Judge or the Agency that her telephone had been disconnected and ask that she be contacted via e-mail or cell phone.  Moreover, Complainant provided no explanation as to why the certified mailings from the Agency went unclaimed when she received ...[5] the Acknowledgment and Order and the Order Scheduling Hearing that were sent to the same address.

In her response to the Show Cause Order Complainant further argued that she should have been contacted by e-mail or cell phone because she gave that information to the Agency in a letter dated January 29[,] 2008[,] indicating she wished to continue her discrimination case.  She did not provide a copy of the letter nor does she claim that she indicated in the letter that her home

_____

[5] In the original the sentence continues at this point with the wording "delivered to the same address w[h]ere she received the Acknowledgment and Order and the Order Scheduling Hearing that were sent to the same address."  Braisted Decl., Ex. A at 4.  For clarity, the Court has deleted the eight words following the word received.

7

telephone number was disconnected.

Complainant has shown no good cause for failing to follow the orders of the Commission nor did she at any time from the issuance of the November 2008 Acknowledgment and Order forward a request [for] an extension o[f] time or stay of proceedings due to any medical condition.

For the reasons set forth above, the sanction of dismissal of this complaint pursuant to 29 C.F.R. § 1614.109(f)(3) is appropriate. Accordingly, the subject Complaint is DISMISSED before the Commission. This matter is referred to the Agency for issuance of a final agency decision.

Id.

The Department of Defense, Washington Headquarters Services, issued a Final Order with regard to the discrimination complaint of Angela Jefferson v. Robert M. Gates, Secretary of Defense, Agency Docket No. 2008-DSCA-058, EEOC No. 570-2009-00063X, on April 6, 2009. See Plaintiff's Response, Ex. 1 at 1. The Final Order stated that: "this final action notifies you that the Agency will fully implement the [Administrative Judge's] decision. The term 'fully implement' means the Agency adopts without modification the Judge's decision." Id. The Final Order further informed Plaintiff that:

If you are dissatisfied with the Agency's final action you have the following rights:

a. You have the right to file an appeal of the Agency's final action to the EEODC Office of Federal Operations (OFO) at any time up to 30 calendar days after receipt of this decision. ...

....

e. If you elect not to file an appeal to the EEOC, OFO under Title VII of the Civil Rights Act, as amended,

8

and/or the [ADEA], as amended, you may file a civil action in the U.S. District Court for the Eastern District of Virginia:

      (1) within 90 calendar days of receipt of the Agency's final action, if no appeal to the EEOC has been filed;

      (2) within 90 days after receipt of the EEOC final decision on appeal; or

      (3) after 180 days from the date of filing an appeal with the EEOC if there has been no final decision by the EEOC.

    Filing a civil action will result in termination of the administrative processing of the complaint.

....

Id. at 1-2.

Plaintiff filed the instant Complaint on June 3, 2009, in the United States District Court for the Eastern District of Virginia. See Docket; see also Complaint. On motion of Defendant Robert M. Gates ("Defendant"), see Defendant's Motion to Defer a Response to the Complaint and to Transfer Venue (Doc. #10), the case was transferred to this Court on November 6, 2009, see Docket. On February 2, 2010, Defendant filed the Motion to Dismiss. See id. Plaintiff filed her Response to the Motion on March 3, 2010. See id. The matter was subsequently referred to this Magistrate Judge, see id., and was thereafter taken under advisement.

9

## II.   Law

### A.   Pro Se Status

Plaintiff is proceeding pro se, and her Complaint is held to a less stringent standard than one drafted by a lawyer.  See Haines v. Kerner, 404 U.S. 519, 520, 92 S.Ct. 594, 596 (1972).  It is to be "read ... with an extra degree of solicitude."  Rodi v. Ventetuolo, 941 F.2d 22, 23 (1st Cir. 1991).  The Court is required to liberally construe a pro se complaint.  See Strahan v. Coxe, 127 F.3d 155, 158 n.1 (1st Cir. 1997); Watson v. Caton, 984 F.2d 537, 539 (1st Cir. 1993).  At the same time, a plaintiff's pro se status does not excuse her from complying with procedural rules.  See Instituto de Educacion Universal Corp. v. U.S. Department of Education, 209 F.3d 18, 24 n.4 (1st Cir. 2000).  The Court construes Plaintiff's Complaint liberally in deference to her pro se status.

### B.   Applicability of Fed. R. Civ. P. 12(b)(6)

The defense that a plaintiff has failed to exhaust her administrative remedies is most appropriately considered under Federal Rule of Civil Procedure 12(b)(6).  See Robinson v. Dalton, 107 F.3d 1018, 1022 (3rd Cir. 1997)("Timeliness of exhaustion requirements are best resolved under Rule 12(b)(6) covering motions to dismiss for failure to state a claim."); see also Martin K. Eby Construction Co. v. Dallas Area Rapid Transit, 369 F.3d 464, 467 n.4 (5th Cir. 2004)("Rule 12(b)(6) forms a

proper basis for dismissal for failure to exhaust administrative remedies."); Anjelino v. New York Times Co., 200 F.3d 73, 87 (3rd Cir. 2000)("[T]he District Court should have considered the exhaustion and timeliness defenses presented in the case under Rule 12(b)(6), rather than under Rule 12(b)(1)."); Robinson v. Dalton, 107 F.3d at 1022 ("[T]he causes of action created by Title VII do not arise simply by virtue of the events of discrimination which that title prohibits.  A complaint does not state a claim upon which relief may be granted unless it asserts the satisfaction of the precondition to suit specified by Title VII: prior submission of the claim to the EEOC [ ] for conciliation or resolution.")(quoting Hornsby v. U.S. Postal Serv., 787 F.2d 87, 89 (3rd Cir. 1986))(second alteration in original); cf. Portela-Gonzalez v. Secretary of Navy, 109 F.3d 74, 77 (1st Cir. 1997)("[N]o one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted.")(quoting Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 50-51, 58 S.Ct. 459 (1938)); Vinieratos v. U.S. Department of Air Force, 939 F.2d 762, 768 n.5 (9th Cir. 1991)(noting distinction between jurisdictional requirement and statutory prerequisite and treating exhaustion of administrative remedies as statutory prerequisite).

## C.   Rule 12(b)(6) Standard

In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court must view the stated facts in the light most favorable to the pleader, In Re Credit Suisse First Boston Corp., 431 F.3d 36, 51 (1st Cir. 2005); see also Greater Providence MRI Ltd. Partnership v. Medical Imaging Network of S. New England, Inc., 32 F.Supp.2d 491, 493 (D.R.I. 1998), taking all well-pleaded allegations as true and giving the pleader the benefit of all reasonable inferences that fit the pleader's stated theory of liability, Redondo-Borges v. U.S. Department of Housing & Urban Development, 421 F.3d 1, 5 (1st Cir. 2005); see also Arruda v. Sears, Roebuck & Co., 310 F.3d 13, 18 (1st Cir. 2002).  To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim for relief that is plausible on its face."  Ashcroft v. Iqbal, __ U.S. __, 129 S.Ct. 1937, 1949 (2009)(quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955 (2007)).  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  Id.; see also Bell Atlantic Corp., 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level ....").  While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not require detailed factual allegations, Bell

Atlantic Corp., 550 U.S. at 555; see also Ashcroft, 129 S.Ct. at 1949, "a pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" Ashcroft, 129 S.Ct. At 1949 (quoting Bell Atlantic Corp., 550 U.S. at 555). The fact that a motion to dismiss under Rule 12(b)(6) is unopposed does not relieve the district court of its obligation to examine the complaint to determine whether it is formally sufficient to state a claim. See Pomerleau v. W. Springfield Public Schools, 362 F.3d 143, 145 (1st Cir. 2004) (citing Vega-Encarnacion v. Babilonia, 344 F.3d 37, 41 (1st Cir. 2003)).

The Court, however, is not required to "credit bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like." Aponte-Torres v. Univ. of Puerto Rico, 445 F.3d 50, 54 (1st Cir. 2006)(internal quotation marks omitted); see also Ashcroft, 129 S.Ct. at 1949 ("Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'")(quoting Bell Atlantic Corp., 550 U.S. at 557)(alteration in original). Rule 12(b)(6) is forgiving, see Campagna v. Massachusetts Departmentt of Environmental Prot., 334 F.3d 150, 155 (1st Cir. 2003), but it "is not entirely a toothless tiger," Rivera v. Rhode Island, 402 F.3d 27, 33 (1st Cir. 2005)(quoting Educadores Puertorriquenos en Accion v. Hernandez, 367 F.3d 61, 67 (1st Cir. 2004)(quoting

13

Dartmouth Review v. Dartmouth College, 889 F.2d 13, 16 (1st Cir.
1989))).   A plaintiff must allege facts in support of "each
material element necessary to sustain recovery under some
actionable legal theory."   Campagna, 334 F.3d at 155.

## III.   Discussion

Plaintiff alleges discrimination "in whole or in part, upon
Plaintiff['s] age, color and/or race ...," Complaint ¶ 1, in
violation of the Age Discrimination in Employment Act of 1967, as
amended ("ADEA"); the Federal Equal Pay Act ("FEPA"); Title VII
of the Civil Rights Act of 1964, as amended ("Title VII"); and
the Civil Rights Act of 1866, as amended ("section 1981" or
"§ 1981").   Plaintiff additionally alleges retaliation, see id. ¶
3, as well as harassment, intimidation, and verbal abuse in
violation of the "R.I. Human Rights Act ...," id. ¶ 7.   Plaintiff
seeks a declaratory judgment that Defendant "violated
Plaintiff['s] right to be free from discrimination in the
workplace ...," Complaint at 3, injunctive relief, compensatory,
exemplary, and/or punitive damages, back pay, front pay if
applicable, and attorney's fees and costs, see id.

### A.   ADEA

"Under the ADEA, it is 'unlawful for an employer ... to fail
or refuse to hire or to discharge any individual or otherwise
discriminate against any individual with respect to his
compensation, terms, conditions, or privileges of employment,

because of such individual's age.'"  <u>Reeves v. Sanderson Plumbing</u>

<u>Products, Inc.</u>, 530 U.S. 133, 141, 120 S.Ct. 2097 (2000)(quoting

29 U.S.C. § 623(a)(1))(alteration in original); <u>see also</u> <u>Rossiter</u>

<u>v. Potter</u>, 357 F.3d 26, 28 (1st Cir. 2004)("Congress passed the

ADEA with a view toward ending workplace discrimination based on

age."); <u>Lavery v. Marsh</u>, 918 F.2d 1022, 1025 (1st Cir. 1990)

("[T]he ADEA and Title VII share a common purpose, the

elimination of discrimination in the workplace ....")(quoting

<u>Oscar Mayer & Co. v. Evans</u>, 441 U.S. 750, 756, 99 S.Ct. 2066)

(1979))(second alteration in original).

> In one sense, the ADEA treats federal employees as a
> class apart from other employees.  That difference
> implicates the ADEA's enforcement mechanism: whereas most
> employees must first exhaust administrative remedies
> before instituting an ADEA action, a federal employee has
> the option of bypassing administrative remedies entirely
> and suing directly in the federal district court.

<u>Jorge v. Rumsfeld</u>, 404 F.3d 556, 561 (1st Cir. 2005)(internal

citations omitted); <u>see also</u> 29 U.S.C. § 633a(c);[6] <u>Stevens v.</u>

<u>Department of Treasury</u>, 500 U.S. 1, 6, 111 S.Ct. 1562 (1991)("A

federal employee complaining of age discrimination ... does not

have to seek relief from his employing agency or the EEOC at all.

He can decide to present the merits of his claim to a federal

---

[6] Section 633a deals exclusively with age discrimination in the
federal government.  <u>See</u> 29 U.S.C. § 633a.  Section 633a(c) states
that "[a]ny person aggrieved may bring a civil action in any Federal
district court of competent jurisdiction for such legal or equitable
relief as will effectuate the purposes of this chapter."  29 U.S.C. §
633a(c).

court in the first instance."); <u>Rossiter</u>, 357 F.3d at 26 ("A federal employee ... who wishes to pursue an ADEA claim has a right, not available to other ADEA claimants, to bypass the administrative process and go directly to federal district court."). "A federal employee who wishes to avail himself of this bypass option must notify the EEOC of his intent to sue within 180 days following the occurrence of the allegedly unlawful practice and then observe a thirty-day waiting period before filing suit."[7] <u>Jorge</u>, 404 F.3d at 561; <u>see also</u> 29 U.S.C. § 633a(d).[8]

To establish a disparate treatment claim under the ADEA, "a plaintiff must prove that age was the 'but-for' cause of the employer's adverse decision." <u>Gross v. FBL Financial Services, Inc.</u>, __ U.S.__, 129 S.Ct. 2343, 2350 (2009); <u>see also</u> <u>id.</u> at

---

[7] It is not clear from the record whether Plaintiff complied with these requirements or not. The Court notes that Plaintiff did not check the box for age discrimination on her Complaint of Discrimination in the Federal Government ("DIILS Complaint"). <u>See</u> Braisted Decl., Ex. B (DIILS Complaint).

[8] Section 633a(d) provides that:

When the individual has not filed a complaint concerning age discrimination with the Commission, no civil action may be commenced by any individual under this section until the individual has given the Commission not less than thirty days' notice of an intent to file such action. Such notice shall be filed within one hundred and eighty days after the alleged unlawful practice occurred. Upon receiving a notice of intent to sue, the Commission shall promptly notify all persons named therein as prospective defendants in the action and take any appropriate action to assure the elimination of any unlawful practice.

29 U.S.C. § 633a(d).

2351 ("A plaintiff must prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the 'but-for' cause of the challenged employer decision.")(citing <u>Reeves</u>, 530 U.S. at 141-43).  Because, as with other kinds of employer discrimination cases, ADEA plaintiffs "rarely possess 'smoking gun' evidence to prove their employers' discriminatory motivations," <u>Vélez v. Thermo King de Puerto Rico, Inc.</u>, 585 F.3d 441, 446 (1st Cir. 2009), plaintiffs who do not have such evidence "may nonetheless prove their cases by using the three stage burden-shifting framework set forth by the Supreme Court in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)," <u>Vélez</u>, 585 F.3d at 446-47.[9]  The initial burden to demonstrate a prima facie case of discrimination is Plaintiff's.  <u>See</u> <u>Dávila v. Corporación de Puerto Rico para la Difusión Pública</u>, 498 F.3d 9, 15 (1st Cir. 2007).  "The burden of

_____

[9] The Court of Appeals for the First Circuit observed in <u>Velez</u> that:

> In <u>Gross</u>, the Supreme Court noted that it "has not definitively decided whether the evidentiary framework of <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), utilized in Title VII cases is appropriate in the ADEA context." <u>Gross</u>, 129 S.Ct. at 2349 n.2; <u>see also</u> <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 142, 120 S.Ct. 2097, 147 L.Ed.2d 105(2000)(assuming arguendo that the <u>McDonnell Douglas</u> framework applies to an ADEA claim, and applying it to such a claim, "[b]ecause the parties do not dispute the issue.").  This circuit, however, has long applied the <u>McDonnell Douglas</u> framework to ADEA cases.

<u>Vélez v. Thermo King de Puerto Rico, Inc.</u>, 585 F.3d 441, 447 n.2 (1st Cir. 2009)(citing cases)(alteration in original).

making out a prima facie case is 'not onerous.'"   Mesnick v.
General Electric Co., 950 F.2d 816, 823 (1ˢᵗ Cir. 1991)(quoting
Texas Department of Community Affairs v. Burdine, 450 U.S. 248,
253, 101 S.Ct. 1089 (1981)).

> [A] plaintiff establishes a *prima facie* claim of age
> discrimination by showing that: (1) he was at least 40
> years old; (2) he met the employer's legitimate job
> performance expectations; (3) he experienced an adverse
> employment action; and (4) the employer had a continuing
> need for the services provided previously by the
> plaintiff.

Velázquez-Fernández v. NCE Foods, Inc., 476 F.3d 6, 11 (1ˢᵗ Cir.
2007); see also Mesnick, 950 F.2d at 823 (same).

Turning to Plaintiff's Complaint, she has not pled the first
element of a prima facie case of age discrimination, namely that
she is over forty years old.  However, the Court will assume, for
purposes of this Report and Recommendation, that Plaintiff meets
this requirement as Defendant acknowledges that Plaintiff turned
forty on December 3, 2007.[10]  See Defendant's Mem. at 11.

Regarding the second element, Plaintiff states that she
"performed her duties in a professional and outstanding manner."
Complaint ¶ 2.  Thus she has satisfied the requirement that she
allege she met the employer's legitimate job performance
expectations.

---

[10] Defendant notes, however, that Plaintiff was a member of the
protected class for only the final three weeks of her employment
because she resigned from her position at DIILS on December 27, 2007.
See Defendant's Mem. at 11.

18

As for the third element, although Plaintiff claims that she was subjected to "unlawful and discriminatory conduct and employment practices ...," id. ¶ 3, and a "campaign of harassment and intimidation ...," id. ¶ 7, she has not alleged that she suffered an adverse employment action, such as being denied a promotion, see Arroyo-Audifred v. Verizon Wireless, Inc., 527 F.3d 215, 219 (1st Cir. 2008), or actually or constructively discharged, see Vélez, 585 F.3d at 447; Dávila, 498 F.3d at 15, based on her age.  Defendant argues that because "Plaintiff herself resigned,[11] she must show that she was constructively discharged."  Defendant's Mem. at 10.

Constructive discharge can constitute an adverse employment action under the ADEA.  Jorge, 404 F.3d 556, 561 (1st Cir. 2006); see also Torrech-Hernández v. General Electric Co., 519 F.3d 41, 50 (1st Cir. 2008)("Adverse employment action, for purposes of the ADEA, includes actual or constructive discharge.").  In order to demonstrate that she was constructively discharged, Plaintiff must allege that "the working conditions imposed by the employer had become so onerous, abusive, or unpleasant that a reasonable person in the employee's position would have felt compelled to resign."  Velázquez-Fernández, 476 F.3d at 12 (quoting Suárez v.

---

[11] Plaintiff's Complaint provides no information regarding her departure from DIILS.  Defendant states that Plaintiff "resigned from her employment at DIILS on December 27, 2007."  Defendant's Mem. at 10; see also id., Ex. D (Respon[se] to Show Cause Order) ¶ 2.

Pueblo International, Inc., 229 F.3d 49, 54 (1st Cir. 2000)); see also Torrech-Hernández, 519 F.3d at 50 ("In order to establish constructive discharge, [plaintiff] must show that conditions were so intolerable that they rendered a seemingly voluntary resignation a termination.  In such cases, '[t]he question is not whether working conditions at the facility were difficult or unpleasant,' but rather, an employee 'must show that, at the time of his resignation, his employer did not allow him the opportunity to make a free choice regarding his employment relationship.'")(quoting Exum v. U.S. Olympic Committee, 389 F.3d 1130, 1135 (10th Cir. 2004))(second alteration in original); id. ("Thus, in order for a resignation to constitute a constructive discharge, it effectively must be void of choice or free will.").

In addition to her vague statements regarding unlawful and discriminatory conduct and employment practices and a campaign of harassment and intimidation, Plaintiff alleges that she

> was subjected to different work instructions, extra work and denied sick leave and compensatory time of leave. [Plaintiff's] performance evaluation was changed after it was signed and she was held accountable for others' work that did not work within the same agency. [Plaintiff] was also subjected to different administative procedural requirements and pay garnishment without explanation than her white co-workers.

Complaint ¶ 2.  Elsewhere Plaintiff alleges that the Department of Defense conducted an investigation as "a direct request and consequence of allegations raised by Plaintiff ..., a black female employee, who reported that she had been subjected to

discrimination based on her race (African American), color
(Black), reprisal (prior EEO complaint), harassment (nonsexual),
verbal abuse, different pay and policy standards," id. ¶ 3, and
refers to herself as "the only black employee that was employed
by DIILS," id. ¶ 5.  Nowhere in the Complaint does Plaintiff
claim discrimination based on her age.  Rather, her allegations
appear to pertain to her race and color.

Moreover, Plaintiff has not alleged that she was forced to
resign her position as a result of Defendant's allegedly
discriminatory conduct and practices.  Nor has she provided
specific information or examples which would allow the Court to
conclude that a reasonable person in Plaintiff's position would
have felt compelled to resign.  See Torrech-Hernández, 519 F.3d
at 52 ("The standard for assessing a constructive discharge claim
'is an objective one: it cannot be triggered solely by the
employee's subjective beliefs, no matter how sincerely
held.'")(quoting Marrero v. Goya of Puerto Rico, Inc., 304 F.3d
7, 28 (1st Cir. 2002)); cf. id. at 53 ("[The plaintiff] presents
no evidence suggestive of a plot by GE to rid itself of older
employees or specifically to terminate [the plaintiff].  Rather,
[the plaintiff]'s resignation was unforced ....").  Thus, she has
not pled the third element of her prima facie case.  See
Velázquez-Fernández, 476 F.3d at 13 ("Because Velázquez has not
shown actual or constructive discharge as a matter of law, he has

21

not made out a *prima facie* case under the ADEA ....").

   With respect to the fourth element, Plaintiff's Complaint is silent as to whether DIILS had a continuing need for the services Plaintiff previously provided or whether a younger person was hired to perform those duties.  Accordingly, she has not alleged the fourth element of her prima facie case.

   Because the Court finds that Plaintiff has not pled the third and fourth elements of a prima facie case of age discrimination, Defendant's Motion should be granted as to Plaintiff's ADEA claim.  I so recommend.

   **B.   FEPA**

   FEPA provides that:

> [N]o employer shall discriminate between employees "at a rate less than the rate at which he pays wages to employees of the opposite sex ... for equal work on jobs the performance of which requires equal skill, effort and responsibility, and which are performed under similar working conditions." 29 U.S.C. § 206(d)(1).  To make out a prima facie [c]ase, a plaintiff must establish that "the employer paid different wages to an employee of the opposite sex for substantially equal work."  <u>Byrd v. Ronayne</u>, 61 F.3d 1026, 1033 (1st Cir. 1995).

<u>Maldonado-Cordero v. AT&T</u>, 73 F.Supp.2d 177, 190 (D.P.R. 1999) (first alteration in original).  In order to make out a prima facie case, a plaintiff must show that: "(i) the employer pays different wages to employees of the opposite sex; (ii) the employees ... perform equal work on jobs requiring equal skill, effort, [and] responsibility; and (iii) the jobs are performed under similar working conditions."  <u>Id.</u> (alteration in original).

22

The only allegation in Plaintiff's Complaint relating to differences in pay is that she "was subjected to ... pay garnishment without explanation than her white co-workers." Complaint ¶ 2. Thus, Plaintiff has not made out the first element of her prima facie case, that she was paid less than her male counterparts. She compares the garnishment of her pay to that of "her white co-workers," id., without noting whether these co-workers were male or female. The only other comparison she makes, not in the Complaint but in Plaintiff's Response, is to another female employee.[12] See Plaintiff's Response at 3.

The Court finds that Plaintiff has not pled a prima facie case under FEPA. Accordingly, Defendant's Motion to Dismiss should be granted as to this claim. I so recommend.

**C. Title VII**

Title VII is a vehicle through which an individual may seek recovery for employment discrimination on the grounds of race, color, religion, gender, or national origin. Franceschi v. U.S. Department of Veterans Affairs, 514 F.3d 81, 85 (1st Cir. 2008). "Unlike the ADEA, Title VII does not spare federal employees from running the administrative gauntlet." Jorge, 404 F.3d at 564; see also Franceschi, 514 F.3d at 85 ("Before an employee may sue

---

[12] In Plaintiff's Response, she states that "Plaintiff and another employee (Mrs. Odette Griffin) were classified under the federal system as GS/YB and considered equal employees in job descriptions. A review of the pay record will indicate that Plaintiff was the lowest paying employee with the DIILS agency." Plaintiff's Response at 3.

in federal court on a Title VII claim, he must first exhaust
administrative remedies."); Jensen v. Frank, 912 F.2d 517, 520
(1st Cir. 1990)("Title VII requires exhaustion of administrative
remedies as a condition precedent to suit in federal district
court.").  The purpose of the exhaustion requirement is to
provide the employer with prompt notice of the claim and to
create an opportunity for early conciliation.  Lattimore v.
Polaroid Corp., 99 F.3d 456, 464 (1st Cir. 1996); see also
Martinez v. Potter, 347 F.3d 1208, 1211 (10th Cir. 2003)
("requiring exhaustion of administrative remedies serves to put
an employer on notice of a violation prior to the commencement of
judicial proceedings").

The Title VII administrative process begins with the filing
of an administrative charge before the EEOC.  Franceschi, 514
F.3d at 85; see also Jorge, 404 F.3d at 564 ("An individual who
has suffered discrimination at the hands of a federal employer on
account of race, color, religion, gender, or national origin must
file an administrative complaint with the EEOC within 180 days of
the alleged unlawful employment practice.").  The employee may
sue in federal court only if the EEOC dismisses the
administrative charge or if it does not bring a civil suit or
enter into a conciliation agreement within 180 days of the filing
of the administrative charge.  Franceschi, 514 F.3d at 85; see
also Jorge, 404 F.3d at 564 (describing process).  In either

case, the EEOC must send the employee notice, in the form of what is known as a "right-to-sue letter." Franceschi, 514 F.3d at 85. "With limited exceptions ... the failure to exhaust this administrative process 'bars the courthouse door.'" Id. (quoting Bonilla v. Muebles J.J. Alvarez, Inc., 194 F.3d 275, 278 (1st Cir. 1999)); see also Jorge, 404 F.3d at 564 ("It is thus apparent that '[j]udicial recourse under Title VII ... is not a remedy of first resort.'")(quoting Morales-Vallellanes v. Potter, 339 F.3d 9, 18 (1st Cir. 2003))(alterations in original); Roman-Martinez v. Runyon, 100 F.3d 213, 216-20 (1st Cir. 1996)(holding that a federal employee's failure to contact an EEOC counselor within the limitations period causes him to lose his right to pursue a later de novo action in court).

"While private sector Title VII caes do not require a claimant to cooperate in the administrative process, the same is not true in cases involving federal employees.  In fact, a complainant's failure to cooperate in the administrative process precludes exhaustion when it prevents the agency from making a determination on the merits." Austin v. Winter, 286 Fed. Appx. 31, 36 (4th Cir. 2008)(citing Jasch v. Potter, 302 F.3d 1092, 1094 (9th Cir. 2002))(internal quotation marks omitted); see also Vinieratos, 939 F.2d at 772 ("[A]n administrative exhaustion rule is meaningless if claimants may impede and abandon the administrative process and yet still be heard in federal court.

25

... When a federal employee obstructs the smooth functioning of a properly elected administrative process and abandons that process to pursue a remedy elsewhere, he fails to exhaust his chosen remedy and thereby forecloses judicial review.").

Defendant argues that Plaintiff's "failure to participate in the administrative process constitutes a failure to exhaust her administrative remedies ...," Defendant's Mem. at 7; see also id. at 3, and that, as a result, her Title VII claim should be dismissed.  See id. at 3, 7.  Plaintiff asserts that she "pursued the administrative claim with diligence and in good faith. Plaintiff exhausted all administrative remedies."  Plaintiff's Response at 3; see also id. ("The Plaintiff did not cut short or abandon the administrative process prior to the final disposition.")(internal citation omitted).

According to the Dismissal Order pertaining to Plaintiff's DIILS Complaint, the Administrative Judge on January 2, 2009, issued a scheduling order informing the parties that a telephonic prehearing conference would be held on February 6, 2009, and that witness lists were to be submitted no later than five days prior to the prehearing conference.  See Defendant's Mem., Ex. A at 1; see also id., Ex. C at 2.  Plaintiff "failed to submit a witness list and failed to contact the [Administrative Judge] to request an extension or offer an explanation for her actions." Defendant's Mem., Ex. A at 1; see also id., Ex. C at 2.  Shortly

26

after 1:30 p.m. on February 6th, after being informed by the
Agency representative that he had not heard from Plaintiff, the
Administrative Judge attempted to contact Plaintiff at her last
known telephone number, but it was not in service.  See
Defendant's Mem., Ex. A at 1; see also id., Ex. C at 2.  Later
that afternoon, at approximately 2:50 p.m., Plaintiff telephoned
the Administrative Judge and asked if the pretrial conference was
still being held.  See Defendant's Mem., Ex. A at 1; see also
id., Ex. C at 2. According to the Dismissal Order:

> She offered no explanation for failing to notify the
> Agency or the Commission that her record telephone number
> was no longer in service.  Nor did she explain why she
> ha[d] not contacted the Agency with respect to settlement
> as provided at Paragraph IV of the Acknowledgment Order,
> why she did not respond to the Agency when it attempted
> to contact her to discuss discovery[,] or why she did not
> submit a witness list as ordered in the scheduling order.

Defendant's Mem., Ex. A at 1; see also id., Ex. C at 2.  On
February 17, 2009, the Administrative Judge issued a Show Cause
Order directing Plaintiff to show cause why sanctions, up to and
including dismissal, should not be imposed for her conduct.  See
Defendant's Mem., Ex. A at 1-2; see also id., Ex. C.  The
Adminstrative Judge noted that in her Response to Show Cause
Order Plaintiff did not deny that she failed to submit a witness
list within five days prior to the prehearing conference; that
she requested no extension of time to respond to orders or comply
with deadlines prior to the issuance of the Show Cause Order;
that she did not notify either the Administrative Judge or the

27

Agency that her telephone had been disconnected and ask to be
contacted via e-mail or cell phone; that she failed to explain
why certified mailings were not claimed when she received, at the
same address, the Acknowledgment and Order and Order Scheduling
Hearing; that she did not provide a copy of a letter she claimed
to have sent to the Agency containing her e-mail and cell phone
number; and that she did not provide any medical documentation of
her psychiatric condition. See Defendant's Mem., Ex. A at 3-4.
The Administrative Judge concluded that Plaintiff "ha[d] shown no
good cause for failing to follow the orders of the Commission nor
did she at any time from the issuance of the November 2008
Acknowledgment and Order forward a request [for] an extension
o[f] time or stay of proceedings due to any medical condition."
Id. at 4.  Accordingly, the Administrative Judge dismissed
Plaintiff's DIILS Complaint.

This Court finds that Plaintiff failed to exhaust her
administrative remedies with regard to her Title VII claims due
to her lack of cooperation with the administrative process, which
led to the dismissal of her DIILS Complaint. See Austin, 286
Fed. Appx. at 37 ("Appellant's actions prevented the agency from
fully investigating the complaint and reaching a final decision.
Accordingly, this court finds that Appellant's failure to
cooperate constitutes a failure to exhaust her administrative
remedies."); Vinieratos, 939 F.2d at 773 ("Where, as here, the

complainant has only himself to blame for the absence of an
administrative ruling of the merits of his claim, it is fair to
conclude that he has failed to comply with the administrative
exhaustion requirement.  It is not the role of the federal
judiciary to straighten out a mess that is the complainant's own
doing."); Robinson v. Chao, 403 F.Supp.2d 24, 29 (D.D.C. 2005)
("Plaintiff had an obligation to respond to reasonable requests
in the course of the agency's investigation of her discrimination
claims.  She did not fulfill that obligation, and, therefore, she
did not exhaust her administrative remedies concerning those
claims before filing them in this Court."); cf. Sellers v. U.S.
Department of Defense, C.A. No. 07-418S, 2009 WL 559795, at *12
(D.R.I. Mar. 4, 2009)("Plaintiff did not respond to reasonable
requests to clarify the scope and nature of her claim.
Accordingly, [p]laintiff failed to exhaust her administrative
remedies with respect to her hostile work environment claim.").
Although Plaintiff attempted to explain—after the fact, see
Braisted Decl., Ex. C; Plaintiff's Response at 2—the Court finds
that she clearly failed to comply with the EEOC's procedures and
the Administrative Judge's orders.  Therefore, Defendant's Motion
should be granted as to Plaintiff's Title VII claims.  I so
recommend.

**D.  Section 1981**

In Brown v. General Services Administration, 425 U.S. 820,

96 S.Ct. 1961 (1976), the Supreme Court addressed the question of whether § 717 of the Civil Rights Act of 1964, as amended (the "Act"), 42 U.S.C. § 2000e-16, provides the exclusive judicial remedy for discrimination claims in federal employment.  See id. at 821.  There, the plaintiff had filed suit in federal district court, alleging jurisdiction based on, among other statutes, the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981.[13]  See Brown, 425 U.S. at 823-24.  Based on the intent of Congress in 1972 to create "an exclusive, pre-emptive administrative and judicial scheme for the redress of federal employment discrimination," id. at 829, and the structure of § 717 of the Act, see id., the Supreme Court concluded that § 717 "provides the exclusive judicial remedy for claims of discrimination in federal employment," id. at 835.[14]

---

[13] Section 1981 provides in relevant part that:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a).  The statute defines "make and enforce contracts" as "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."  Id. § 1981(b).

[14] The Supreme Court additionally noted that "sovereign immunity would ... also bar claims against federal agencies for damages and promotion brought under the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981 ...."  Brown v. General Services Administration, 425 U.S. 820, 827 n.8, 96 S.Ct. 1961 (1976).

Accordingly, the Court finds that Plaintiff's claim under §
1981 is barred and that Defendant's Motion to Dismiss should be
granted as to this claim.  I so recommend.

### E.  Retaliation

"Typically, 'in employment discrimination cases, "[t]he
scope of the civil complaint is ... limited by the charge filed
with the EEOC and the investigation which can reasonably be
expected to grow out of that charge."'"  Sellers, 2009 WL 559795,
at *8 (quoting Lattimore v. Polaroid Corp., 99 F.3d at 464
(quoting Powers v. Grinnell Corp., 915 F.2d 34, 38 (1st Cir.
1990)))(alterations in original); see also Fantini v. Salem State
College, 557 F.3d 22, 27 (1st Cir. 2009)("[T]he critical question
is whether the claims set forth in the civil complaint come
within the scope of the EEOC investigation which can reasonably
be expected to grow out of the charge of discrimination.")
(internal quotation marks omitted); Maldonado-Cordero, 73
F.Supp.2d at 186 ("The only claims of discrimination cognizable
before this Court are those that are 'like or reasonably related
to the substance of charges timely brought before the EEOC.'").
However, "[a]n employee may bring to a court a claim of
retaliation under Title VII without first presenting that claim
to the agency if the retaliation is reasonably related to and
grew out of the alleged discrimination that the employee did
report, e.g., the retaliation is for filing the agency complaint

itself." Sellers, 2009 WL 559795, at *13 (alteration in original)(internal quotation marks omitted); see also Clockedile v. New Hampshire Department of Corrections, 245 F.3d 1, 6 (1st Cir. 2001)("[R]etaliation claims are preserved so long as the retaliation is reasonably related to and grows out of the discrimination complained of to the agency—e.g., the retaliation is for filing the agency complaint itself.").

In order to make out a prima facie case of retaliation, Plaintiff must show that: "(1) she engaged in protected conduct under Title VII; (2) she suffered an adverse employment action; and (3) the adverse action was causally connected to the protected activity." Fantini, 557 F.3d at 32.

> An employee has engaged in activity protected by Title VII if she has either (1) opposed any practice made an unlawful employment practice by Title VII or (2) made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under Title VII. ... The term protected activity refers to action taken to protest or oppose statutorily prohibited discrimination.

Id. (internal quotation marks omitted).

The only reference to retaliation in Plaintiff's Complaint is her statement that the May, 2007, Defense Department investigation "was a direct request and consequence of allegations raised by Plaintiff ..., a black female employee, who reported that she had been subjected to discrimination based on her race (African American), color (Black), reprisal (**prior** EEO complaint), harassment (nonsexual), verbal abuse, different pay

32

and policy standards." Complaint ¶ 3 (bold added). As was the case in <u>Sellers</u>, however, Plaintiff appears to allege that the alleged retaliation occurred "in retaliation for having filed earlier charges, not in retaliation for bringing the charge on which this complaint is based." 2009 WL 559795, at *13 (internal citation omitted). Accordingly, the Court finds that Plaintiff has failed to exhaust her administrative remedies as to her retaliation claim. <u>See id.</u> ("Plaintiff cannot establish that the alleged retaliatory acts ... occurred after the filing of her 2006 EEO complaint which is the subject of this case."); <u>see also</u> <u>Mosely v. Potter</u>, Docket No. 07-96-P-S, 2008 WL 877787, at *7 (D. Me. Mar. 27, 2008)(noting <u>Clockedile</u>'s holding that "[a]n employee may bring to a court a claim of retaliation under Title VII without first presenting that claim to the agency if the retaliation claim is reasonably related to and grew out of the alleged discrimination that the employee did report-'*e.g.,* the retaliation is for filing the agency complaint itself.'")(quoting <u>Clockedile</u>, 245 F.3d at 6).

Even if Plaintiff is arguing retaliation based on filing the DIILS Complaint, Plaintiff has failed to make out a prima facie case of retaliation. Reading her Complaint liberally, the Court assumes that she engaged in protected activity. <u>See</u> Complaint ¶ 3; <u>see also</u> <u>Fantini</u>, 557 F.3d at 32. However, there is nothing in the Complaint which would allow the Court to conclude that her

departure from DIILS was anything other than voluntary.
Accordingly, she has not shown that she suffered an adverse
employment action in the form of constructive discharge.

Moreover, Plaintiff provides no details regarding the "prior
EEO complaint," what discrimination complained of constituted
retaliation, a link between the prior complaint and the
discrimination, and who perpetrated the alleged retaliation.
While the First Circuit has held that a "hostile work
environment, tolerated by the employer, is cognizable as a
retaliatory adverse employment action ...," Noviello v. City of
Boston, 398 F.3d 76, 89 (1st Cir. 2005); see also id.
("[W]orkplace harassment, if sufficiently severe or pervasive,
may in and of itself constitute an adverse employment action
sufficient to satisfy the second prong of the prima facie case
for Title VII retaliation cases."), Plaintiff has not shown that
the retaliation was "causally connected to the protected
activity," Fantini, 557 F.3d at 32; see also Douglas v. J.C.
Penney Co., 474 F.3d 10, 15 (1st Cir. 2007)("To establish a claim
of unfair retaliation, a plaintiff needs to prove that protected
conduct and an adverse employment action are causally linked.");
cf. Lattimore, 99 F.3d at 464 ("Even a *pro se* complainant is
required to describe the essential nature of the claim and to
identify the core facts on which it rests."). Therefore, she has
failed to establish a prima facie case of retaliation. See

<u>Clockedile</u>, 275 F.3d at 7 ("little direct evidence links specific actions with an explicit retaliatory motive").

Thus, the Court finds that Plaintiff has not exhausted her administrative remedies with regard to her retaliation claim. The Court further finds that, even if she had exhausted her administrative remedies, she has not made out a prima facie case of retaliation.   Therefore, Defendant's Motion to Dismiss should be granted as to Plaintiff's retaliation claim.   I so recommend.

**F.  State law claim(s)**

Plaintiff alleges that her rights under the "R.I. Human Rights Act," Complaint ¶ 7, were violated.   It is unclear to which statute Plaintiff intended to refer.   Defendant "assumes," Defendant's Mem. at 7, that Plaintiff meant to cite to the Rhode Island Fair Employment Practices Act ("RIFEPA"), R.I. Gen. Laws § 28-5-7 <u>et seq.</u> (2003 Reenactment).   Alternatively, Plaintiff may have intended to refer to the Rhode Island Civil Rights Act ("RICRA"), R.I. Gen. Laws § 42-112-1 <u>et seq.</u> (2006 Reenactment). In either case, because the Court has recommended that all of Plaintiff's federal claims be dismissed, the Court further recommends that it decline to exercise supplemental jurisdiction over Plaintiff's state law claim(s).   <u>See</u> <u>Rossi v. Gemma</u>, 489 F.3d 26, 39 (1st Cir. 2007)("At the time the district court made its ruling, it had dismissed all federal claims on the pleadings, and so dismissal of the state claims was perfectly reasonable.

'As a general principle, the unfavorable disposition of a plaintiff's federal claims at the early stages of a suit ... will trigger the dismissal without prejudice of any supplemental state-law claims.'")(quoting <u>Rodriquez v. Doral Mortgage Corp.</u>, 57 F.3d 1168, 1177 (1st Cir. 1995))(alteration in original); <u>see also</u> <u>Maldonado-Cordero</u>, 73 F.Supp.2d at 187 ("In light of the fact that the Court has dismissed Plaintiffs' federal sexual harassment claims, the Court declines to exercise its supplemental jurisdiction over the sexual harassment claims under Puerto Rico Laws ....."); <u>DM Research, Inc. v. College of American Pathologists</u>, 2 F.Supp.2d 226, 230 (D.R.I. 1998)("Having determined that the sole federal claim should be dismissed, the Court has discretion to determine whether it should exercise supplemental jurisdiction over those claims.")(citing 28 U.S.C. § 1367(c)(3)); <u>id.</u> ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.")(quoting <u>United Mine Workers of America v. Gibbs</u>, 383 U.S. 715, 726, 86 S.Ct. 1130 (1966)).

**G. Summary**

The Court finds that Plaintiff's ADEA, FEPA, and retaliation claims should be dismissed because she has not made out a prima facie case as to these claims.  In addition, with respect to her retaliation claim, it appears that Plaintiff is claiming

retaliation based on her filing of a prior EEOC complaint, not the current EEOC complaint on which the instant action is based. The Court further finds that Plaintiff's Title VII claim should be dismissed because she has failed to exhaust her administrative remedies.  Her § 1981 claim should be dismissed because Title VII is the exclusive remedy for discrimination in federal employment. Finally, the Court should decline to exercise supplemental jurisdiction over Plaintiff's state law claim(s) if her federal claims are dismissed.  Accordingly, Defendant's Motion to Dismiss should be granted as to all counts of Plaintiff's Complaint.  I so recommend.

## IV.  Conclusion

For the reasons explained above, the Court recommends that Defendant's Motion to Dismiss be granted.  Any objections to this Report and Recommendation must be specific and must be filed with the Clerk of Court within fourteen (14) days of its receipt.  See Fed. R. Civ. P. 72(b); DRI LR Cv 72(d).  Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district court and of the right to appeal the district court's decision.  See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ David L. Martin
DAVID L. MARTIN
United States Magistrate Judge
July 2, 2010